Case 4:25-cr-00318   Document 1   Filed on 06/16/25 in TXSD   Page 1 of 6

United States Courts
Southern District of Texas
**FILED**
*June 16, 2025*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| v. | § § | Criminal No. |
| **JASJIT BHATTY,** | § § | **4:25-cr-318** |
| Defendant. | § § § | |

**INFORMATION**

THE UNITED STATES CHARGES:

**INTRODUCTION AND BACKGROUND**

At all times material to this Information, unless otherwise specified:

1. The United States Small Business Administration (SBA) is an executive branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of its efforts, the SBA provided business loans through banks, credit unions, and other lenders. Those loans had government backed guarantees.

3. On or about March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for expansion of others, including programs created and/or administered by the SBA. The CARES Act included the Paycheck Protection Program (PPP) and enhanced the Economic Injury Disaster Loan Program

(EIDL).

## *The Paycheck Protection Program*

4.	The PPP is overseen by the United States Small Business Administration, (SBA), which has authority over all such loans. Individual PPP loans, however, are issued by private approved lenders (most commonly, banks and credit unions), who receive and process PPP loan applications and supporting documentation, and then make loans using the lenders' own funds.

5.	To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

6.	Small businesses and sole proprietorships have applied for PPP relief through one of over 4,900 SBA designated lending institutions. To apply, applicants must complete and transmit to the lender an SBA Form 2483, which requires the applicant to identify the entity's average monthly payroll, as calculated according to the requirements of the CARES Act. SBA Form 2483 also requires the applicant to certify that: "The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors," that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" and that "[t]he funds would be used to retain

workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule."

7. A borrower can submit a loan application directly to an SBA approved lender such as a bank or to an SBA intermediary company that reviews the application and then partners with a bank to fund the loan. The loan application is also transmitted to the SBA via an electronic platform known as ETRAN. Before submitting a PPP loan application through ETRAN, the lender or intermediary company must have collected the information and certifications set forth in SBA Form 2483. Loans guaranteed under the PPP were 100% guaranteed by the SBA, and the full principal amount of the loans may qualify for loan forgiveness. An applicant would qualify for loan forgiveness if the borrower would certify that the funds were used as prescribed by the CARES Act.

8. The application contained information as to the purpose of the loan, average monthly payroll, number of employees, and background of the business and its owner. Applicants were also required to make certain good faith certifications, including that economic uncertainties had necessitated their loan request for continued business operations, and that they intended to use loan proceeds only for the authorized purposes.

*Economic Injury Disaster Loan*

9. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $15,000 to small businesses. The

amount of the advance was determined by the number of employees the applicant certified having reported under penalty of perjury. The advances did not have to be repaid.

11.     In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenue for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge under the penalty of perjury.

12.     EIDL applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided in the application concerning the gross revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. Basic loan amount calculation prior to April 6, 2021 was to cover six months of gross profit for a maximum of $150,000. EIDL funds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds were not permitted to be used for the same purpose as the PPP funds.

## The Defendant and Related Entities

13.     Defendant **JASJIT BHATTY** ("**BHATTY**") was a resident of Houston, Texas.

14.     On or about October 18, 2019, **BHATTY** registered SBJB Hospitality LLC ("SBJB") as a Limited Liability Company with the Texas Secretary of State. **BHATTY** was listed as a managing member.

## COUNT ONE
### (18 U.S.C. § 1001 – False Statements)

15. Paragraphs 1 through 14 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

16. On or about June 18, 2020, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**JASJIT BHATTY,**

knowingly and willfully made a materially false, fictious, and fraudulent statement and representation, knowing that the statement and representation was untrue, in that **BHATTY** submitted a PPP application to the SBA via Allegiance Bank for business SBJB. In support of the application, **BHATTY** submitted a false IRS Form 940 covering the year of 2019 to the SBA. As a result of **BHATTY** causing the materially false, fictitious, and fraudulent statement to be made to the SBA, the SBA incurred a monetary loss of $98,600.

All in violation of 18 U.S.C. § 1001.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

17. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the United States gives notice that upon the defendant's conviction of Count One of this Information, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy.

18. The United States also gives notice that it will seek a money judgment against the defendant.

19. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment.

Nicholas J. Ganjei
United States Attorney
Southern District of Texas

By: */s/ Sherin S. Daniel*
Sherin S. Daniel
Assistant United States Attorney
Southern District of Texas
(713) 567-9000